JAMES BLACK DRY GOODS COMPANY et al., Appellants, v. IOWA INDUSTRIAL COMMISSIONER et al., Appellees.

**MASTER AND SERVANT:** Workmen's Compensation Act—Jurisdiction of Court—Certiorari.  The decision of the industrial commissioner and the arbitration committee, under Sec. 2477-m33, Code Supp., 1913, on the fact controversy, is reviewable in the district court by certiorari, though no jurisdictional question is involved.

**MASTER AND SERVANT:** Workmen's Compensation Act—Dependency—Desertion.  Under Sec. 2477-m16 (c) (1), Code Supp., 1913, providing that the surviving spouse shall be conclusively presumed to be wholly dependent upon a deceased employee, unless it be shown that the survivor willfully deserted the deceased, without fault on the part of the deceased, there must, in order to constitute desertion under said statute, be cessation of the marriage relation, the intent to desert, and the absence of consent or misconduct of the party alleged to have been deserted.

**MASTER AND SERVANT:** Workmen's Compensation Act—Desertion of Wife—Sufficiency of Evidence.  Evidence reviewed, and

held insufficient to show that the wife claiming compensation for the death of her husband had deserted him, within the meaning of Sec. 2477-m16 (c) (1), Code Supp., 1913.

**MASTER AND SERVANT:** Workmen's Compensation Act—Desertion by Wife—Evidence. If a husband is not able to pay his debts and support his family, the wife may, without her husband's consent, earn wages to help support herself and children, without being charged with desertion under Sec. 2477-m16 (c) (1), Code Supp., 1913.

*Appeal from Black Hawk District Court.*—H. B. BOIES, Judge.

JULY 2, 1919.

APPEAL from a judgment in certiorari proceedings. This case was originally tried before the arbitration committee, which found for appellee Norma Wright. Thereafter, the cause was reviewed by the district court, upon application of plaintiffs, appellants, which court confirmed said finding. The plaintiffs appeal.—*Affirmed.*

*Williams & Clark,* for appellants.

*Reed, Tuthill & Reed,* for appellees.

PRESTON, J.—Appellants filed their petition in the district court for the writ of certiorari on October 4, 1916. Four or five errors are assigned, some of which relate to the admission of evidence and the like before the arbitration committee and the commissioner, and that the trial court erred in holding, under the evidence, that there was no desertion. The principal point in the case is,—and indeed it was conceded by appellants at the oral argument on submission that the only question in the case was, whether or not the appellee Norma Wright had deserted her husband prior to his injury and death, and for that reason would

not be entitled to compensation.

1. MASTER AND SERVANT: Workmen's Compensation Act: jurisdiction of court: certiorari.

Appellees contend in this court that certiorari is not the proper method of reviewing the decision of the commissioner and the arbitration committee, because no jurisdictional question is involved; second, that this court does not enter into a fact controversy in such cases; and third, that the facts show that appellee Norma Wright did not desert her husband. Appellee's husband, George E. Wright, was struck by an interurban car, and killed, on June 1, 1915, at Waterloo, Iowa. He was an employee of the appellant Dry Goods Company. The other appellant is the insurer of the Dry Goods Company. It was admitted that the injury arose out of the employment of deceased by the Dry Goods Company. For rule as to what questions will be considered in such a case, see *Des Moines Union R. Co. v. Funk,* 185 Iowa 330; *Griffith v. Cole Bros.,* 183 Iowa 415; *Goeppinger v. Board of Supervisors,* 172 Iowa 30; Code Supplement, 1913, Section 2477-m33. Other cases might be cited, perhaps, but the rule seems to be settled. Code Supplement, 1913, Section 2477-m16 (c) (1), provides that:

"The following shall be conclusively presumed to be wholly dependent upon a deceased employee: (1) The surviving spouse, unless it be shown that the survivor willfully deserted deceased without fault upon the part of the deceased; and if it be shown that the survivor deserted deceased without fault upon the part of deceased, the survivor shall not be regarded a dependent in any degree. No surviving spouse shall be entitled to the benefits of this act unless she shall have been married to the deceased at the time of the injury."

Appellants' contention is that the undisputed evidence shows that the appellee Norma Wright had deserted her husband; and that, therefore, the allowance to her of com-

pensation, as the widow of deceased, was illegal. It seems to be conceded that, in such a proceeding, we do not pass upon questions of fact, and that, if the committee and the commissioner could have found, under the evidence, even though there was a conflict therein, that said appellee had not deserted her husband, then there is no question for this court to pass upon.

The cases cited by both parties on the question of desertion are divorce cases, and the same cases, substantially, are relied on by both. In divorce cases, the rule seems to be that there are four elements necessary to constitute desertion: First, the cessation of the marriage relation; second, the intent to desert; third, a continuance of the desertion during the statutory period; fourth, the absence of consent or misconduct of the deserted party. The divorce cases may not be precisely analogous. The divorce statute provides for desertion for a specified time, which is not the case in the statute as to compensation. Otherwise, we think there is but little, if any, difference. It is true that, in the instant case, it is a question of dependence and compensation, rather than of a dissolution of marital relations. Under the statute, the dependence is presumed, unless there is desertion, where the marriage relation between husband and wife is involved. Both statutes involve the element of willfulness. We think all other elements, that is, the cessation of the marriage relation, the intent to desert, and the absence of consent or misconduct of the party alleged to have been deserted, are necessary to constitute desertion under the compensation statute. Under this rule, we shall refer to the evidence as

2. MASTER AND SERVANT: Workmen's Compensation Act: dependency: desertion.

briefly as may be, particularly the evidence

3. MASTER AND
SERVANT:
Workmen's
Compensation
Act: desertion
of wife: suffi-
ciency of evi-
dence.

on behalf of appellee Norma Wright, to sus-
tain her claim, and the finding of the com-
missioner that there was no desertion.
There is really but little dispute in the evi-
dence.   It is more a question of what con-
clusion should be drawn therefrom, and whether the com-
mittee and commissioner were justified in making their
finding.

Appellants contend that appellee deserted her husband
in 1909, at the time she left Waterloo. It appears that ap-
pellee Norma Wright and George E. Wright were married
in Vermont, in 1883, and lived together until 1902, when he
left because of some serious financial difficulty.   From
1902 to the time of his death, he changed locations frequent-
ly, being in Little Rock, Arkansas, New Mexico, Memphis,
Tennessee, Chicago, Omaha, and Muscatine.   He also had
several positions at Waterloo, Iowa. Soon after he left, in
1902, he wrote appellee from Little Rock, saying, in part:

"My Dearest Little Sweetheart: And you want to be
my little wife, always, and I want you to be my dear little
wife always.  I promise before God never again to give you
cause to regret any action of mine.  I am living uprightly,
and will die before I ever again do any wrong.  *  *  *
I hope you will fully believe me, my darling, for it is the
truth.  *  *  *  Oh, I have suffered so much, and now that
I am enabled to see and understand everything, my sin-
fulness seems awful.  My darling, I shall strive hard to
get enough to pay up everything, and clear up everything
with the world, and I can meet those I owe, and you can all
feel your George is worthy of a place among men."

Between the year 1902 and the time of his death, de-
ceased visited his family twice, at Staten Island, once in
1906, and again in 1907.  Each time, he remained a couple
of months, and then came west.  About 1909, appellee and

her 15-year-old son visited deceased in Waterloo, and they lived together for about two months. It is shown that they lived in one room and boarded out. Some of the witnesses say there were two rooms, but, at any rate, it was not a home. Appellee worked, part of the time, to help support them. She says her husband did not show a willingness to provide a home for her in Waterloo, because he did not provide it; that he did not have financial means; that he had a great many things to pay up. During these two months, deceased tried to find employment for his son in Waterloo. There was another son in the east. Appellee says she left Waterloo on account of financial affairs and stress, and the placing of her son at work. They returned to Staten Island, and the son took a position in a bank, which he has held ever since. There was a quarrel or disagreement between husband and wife, during the time they were living together at Waterloo; but they made up, and before she left, they talked over their plans for a future home. She said they had hoped that some time they could have a home, and that her husband said he hoped some time they would have a home where the children could come, and where they could all be together. They parted good friends, and the evidence does not indicate that they gave up this hope of some day having a home together. The evidence is that appellee left Waterloo with the consent and approval of her husband; that, when she told him that she was going, he said it would be all right, until they could get financially better fixed; that he thought it would be better for her and her younger son to leave until he could get a better start. The letters thereafter corroborate this. Within a month of the time she left Waterloo, she received $20 from him. Deceased sent her money at other times. In 1912, appellee wrote her husband:

"My Dearest George: I wish to thank you very much for sending me the money. I am awfully happy when I

get it, because I realize you are thinking of me. Some time you and I are going to be very happy. I just know it. Now, George dear, write me often, and all the news. With lots of love. Norma."

This letter was written after the alleged desertion. The record shows a number of other letters and postal cards between the two. There are a number of registered packages, which she says were letters containing money. It seems that appellee worked in hotels in the south in the winter, and in the east in the summer time. In February, 1915, a few months before her husband was killed, and while she was second housekeeper at a hotel in Palm Beach, Florida, she wrote her husband, in part:

"That is a nice hotel you were in. I have been in so many I hate them, but I have made a success of my work, and it gives me a living. I am always hoping to have a little home somewhere, and perhaps, before we die, we shall. Write me whenever you can. I often think of our happy times, and the lovely times you used to give me, and regret our years of loneliness, for we both have missed so much that would have made life worth living. Hoping to receive a long letter from you, and with love and best wishes, Norma."

In March, 1915, deceased wrote his son an affectionate letter, saying that he was looking for a letter from the boy's mother, and presumed she would be back in New York soon. Again, in March, 1915, he wrote this son, saying that he might visit them the next summer, and enclosed a note to his wife. There is evidence on behalf of appellants by people who were acquainted with deceased, and who met appellee when she was at Waterloo; and their thought is that appellee was not cordial toward her husband, and that she did not seem to care for housework; and there is evidence by some of these witnesses as to statements made by deceased in regard to her going.

We are of opinion that the evidence falls far short of showing desertion on the part of appellee. The mere fact that they did not live together is not enough. We have held that separation and desertion are not synonymous, in *Kupka v. Kupka,* 132 Iowa 191, 193, approved in *Tipton v. Tipton,* 169 Iowa 182, 185. We have said in a divorce case that the act is willful when there is a design to forsake the other spouse willfully, or without cause, and thereby break up the marital union, deliberate intent to cease living with the other, as spouse, abnegation of all duties of the marriage relation, the actual ceasing of cohabitation, and the intent to desert. In *Kirkpatrick v. Kirkpatrick,* 81 Neb. 627 (116 N. W. 499), it was said that separation, no matter how long continued, unless there was an intent not to return, or, in other words, an intent to abandon, would not constitute grounds for divorce. In *Day v. Day,* 84 Iowa 221, 226, it was said that, if plaintiff consented to defendant's living apart from him, there was no desertion. The thought of some of the cases seems to be that there must be a refusal. Appellants cite Massachusetts and Michigan cases, holding that the claimant for compensation must show that she and her husband were living together at the time of his death, and that her living apart from him was not for justifiable cause, if he was earning enough to support her properly. But appellants concede that the statutes are not analogous to the Iowa statute, because of provisions in the other states requiring that they shall be living together, etc. As to one feature or reason for appellee's living apart from her husband and earning money, we think it would not do to hold that, if a husband is not able to pay his debts and support his wife, she may not, with her husband's consent, earn wages to help support herself and her children, without being charged with desertion. Without further discussion, we

4. MASTER AND SERVANT: Workmen's Compensation Act: desertion by wife: evidence.

think the committee and the commissioner were justified in finding, under the evidence, that appellee had not willfully deserted her huband, and that the trial court properly so held, under the record presented to him. The judgment is—*Affirmed.*

LADD, C. J., EVANS and SALINGER, JJ., concur.