Henrietta V. Koeppel, appellant, claimant, *v.* E. I. duPont de Nemours & Co., appellee, defendant.

(*January* 7, 1936.)

LAYTON, C. J., HARRINGTON and RODNEY, J. J., sitting.

*George Gray Thouron* (of Ward & Gray) for appellant.

*G. Dare Hopkins* and *Abel Klaw* (of the Pennsylvania Bar) for appellee.

Superior Court for New Castle County. Appeal from Industrial Accident Board, No. 276, September Term, 1935.

RODNEY, J., delivering the opinion of the Court:

Perhaps the first question to be briefly considered is, Into what class falls the determination of the question of dependency? The great weight of authority is to the effect that dependency is a question of fact and not of law. An examination of many of the cases, however, discloses that this determination was arrived at by drawing a distinction between a presumptive dependency on the one hand and what we may call a "factual" dependency on the other. Of course, where neither the Statute nor the decisional law has established any presumptive dependency, then such dependency must be established as a fact in every case. Such is the law in England. In Delaware, however, the word "dependent" is a qualification attached to every class of claimant except that of a wife living with her husband or of children under the age of 16 years. In these two classes dependency is not a requirement so there is a clear indication of presumptive dependency. Whether or not a wife was living with her husband is, of course, a question of fact, though even this must involve legal questions concerning absences for fixed or indeterminate periods. The living together having been established as a fact, the dependency follows as a matter of law. In *Benjamin F. Shaw Co. v. Palmatory*, 7 *Boyce* (30 *Del.*) 197, 105 *A.* 417, 418, the Court said that dependency was a fact, involving principles of law. In *Rudnick v. White Bros.*, 7 *Boyce* (30 *Del.*) 576, 109 *A.* 881, 882, the Court said that "dependency is not entirely one of fact." We think it more accurate to say that de-

pendency is a mixed question of law and· fact. The Industrial Accident Board hears the facts and from these facts draws certain inferences and comes to certain conclusions. These latter processes may involve questions of law, for rights deducible from proven facts often and usually are questions of law.

The question of whether dependency be a question of fact or of law is of chief moment when considered in connection with appellate proceedings from the finding of the Accident Board. In almost all of the States matters of fact determined by the Board are not reviewable because of express statutory provisions. In Delaware the Statute provides that the finding of the Board is final and conclusive between the parties unless appealed from within ten days. The inference is quite clear that if an appeal is taken within the statutory time that the finding of the Board (be it fact or law) is not conclusive but that the action of the Superior Court is the conclusive finding. The Statute clothes the Superior Court with power to "affirm, reverse or modify" the award of the Board. Because, however, the Statute requires that the Superior Court hear the matter on the record taken at the hearing before the Board and the Court has not the benefit of seeing and hearing the witnesses themselves, so the Court in *Rudnick v. White Bros., supra,* made use of the analogy of a verdict by a jury and determined that a finding of fact by the Industrial Accident Board would not ordinarily and generally be reviewed if such finding was supported by evidence that would reasonably warrant it. In view of the language of the Statute, we do not think the Court meant to say that it did not have the power and would not reconsider the facts if occasion in any particular case required it.

In the present case, however, while the Board made a finding of facts, yet these facts were all either

specifically stipulated to be true or were uncontroverted, and consequently the only question was one of law growing out of the admitted facts.

The question of dependency before us is quite narrow but it is made more difficult by reason of the great mass of authorities in some way bearing upon the subject. Great care must be exercised in the consideration of these cases, for every one depends upon the language and the purpose of the under-lying Statute. Many of these cases are collected in lengthy notes in 13 *A. L. R.* 686; 30 *A. L. R.* 1253; 35 *A. L. R.* 1066; 39 *A. L. R.* 313; 53 *A. L. R.* 218; 62 *A. L. R.* 170; 86 *A. L. R.* 880; 6 *N. C. C. A.* 247; 9 *N. C. C. A.* 585; 13 *N. C. C. A.* 187; 16 *N. C. C. A.* 77; *L. R. A.* 1916*A*, 121, 248; *L. R. A.* 1917*D,* 157; *Ann. Cas.* 1918*B,* 750.

While it is unnecessary to consider at length the purposes of the *Workmen's Compensation Law,* yet it seems clear that one purpose was to place upon industry or business, as a whole, a portion of the loss arising from industrial accidents and to make compensation for the injury or death of an employee more direct, certain and economical. It is quite clear that one prime objective was "compensation for the pecuniary loss sustained by reason of the cessation of the workman's power of earning." Almost every section of the Statute, by express use of the word, makes it clear that "compensation" for the injury or death was the aim and purpose of the Statute. Now, "compensation" is a counter-balancing, a making up for, or a substitution of one thing for another that has been withdrawn.

For some fifty years before the passing of the *Workman's Compensation Act* there had been in Delaware a statutory equivalent of *Lord Campbell's Act,* giving to a widow, under certain circumstances, a right of action for the death of her husband, but the action was a qualified one

and based on and damages limited to "the death and loss thus occasioned." While the two Statutes differ widely in many particulars, yet the fundamental idea of each was the same, viz., compensation for the loss occasioned by the death. The *Workmen's Compensation Act* furnished the basis of an agreement in advance by the employer and employee as to the amount of compensation for injury or death and the fixation of the beneficiaries.

We now pass more directly to the present case. As we have stated, the *Delaware Act* contemplates that, when a wife is living with her husband there has sprung from the marriage itself and from the status of cohabitation, a theoretical or presumptive dependency on the part of the wife. Where, however, a wife is not living with her husband and there is no joint home maintained, contemplated or in prospect, this presumptive dependency of the wife does not exist and the statutory requirement is that she be "actually dependent" upon her husband for support. This actual dependency is, we think, the direct antithesis of a purely legal or presumptive dependency and must be shown as a fact.

Passing, for the moment, the consideration of the qualifying word "actual" as referring to dependency, we come to the meaning of "dependency" itself. In *Benjamin F. Shaw Co. v. Palmatory, supra,* the Court expressed its inability to state a complete and exhaustive definition of the word dependency as used in the *Workmen's Compensation Act* but approved of the statement that it meant to be "dependent for the ordinary necessities of life for a person of that class and position in life, taking into account the financial and social position of the recipient." While this definition may be entirely correct, yet it is of little or no value in the present case, for we are not at all concerned with the extent of dependency but whether or not it actually

exists or, in other words, just what constitutes one a dependent within the meaning of the Statute. Disclaiming the ability to make a comprehensive definition to cover every case, we think a dependent, within the meaning of the pertinent *Section,* is one who is sustained by or relies for support upon the aid of another or who looks in some way to that other person for those reasonable necessaries consistent with his or her position in life and who does so with some reasonable expectation of future support.

■ Coupling, now, the word "actual" to that portion of the definition of the word dependent, which is most beneficial to the present claimant, we think that a wife actually dependent upon her husband must be one who, in fact and reality, either receives from her husband or relies upon her husband for some of those reasonable necessaries consistent with her condition in life or who, in fact and reality, looks to her husband with some reasonable expectation or prospect of some degree of future maintenance or support. 28 *R. C. L.* 770; *Miller v. Public Service R. Co.,* 84 *N. J. Law* 174, 85 *A.* 1030; *Batista v. West Jersey & S. R. Co.* (*N. J. Sup.*), 88 *A.* 954.

It will be seen that we do not so limit the meaning of dependency that it must be based on the actual receipt of monetary or other support, for that would be too narrow a construction. A deserted wife or one not living with her husband may not actually receive support but the facts might show that she both relied upon and looked to that support for her maintenance. On the other hand, we must realize that our Statute restricts compensation to widows "actually dependent," and these words must be given some meaning. Our Statute does not follow that of New York where benefits are payable to the wife irrespective of dependency, *Mutimer v. General Electric Co.,* 207 *App. Div.* 1, 201 *N. Y. S.* 588; or of Missouri, where a wife is conclusively pre-

sumed to be dependent on a husband, legally liable for support, *Woods v. American Coal & Ice Co. (Mo. App.)*, 25 *S. W.* (2d) 144; or of Georgia, where a wife is conclusively presumed to be dependent upon her husband whom she has not voluntarily deserted or abandoned at the time of the accident (*Statute of* 1920 [*Laws Ga.* 1920, *pp.* 188, 189, § 39]) ; or of Illinois and Indiana (since 1919), where a wife is conclusively presumed to be dependent upon one on whom the law places a legal duty to support, *H. G. Goelitz Co. v. Industrial Board*, 278 *Ill.* 164, 115 *N. E.* 855; *Messmore v. Madison Glue Mfg. Co.*, 82 *Ind. App.* 184, 145 *N. E.* 556; nor is our Statute similar to those of Minnesota, Tennessee, Michigan, Iowa or Massachusetts, where a wife is entitled to compensation if living apart from her husband for justifiable cause or if she has been deserted, *Conway v. Todd County*, 187 *Minn.* 223, 244 *N. W.* 807; *Cambria Coal Co. v. Daugherty*, 161 *Tenn.* 457, 33 *S. W.* (2d) 71; *Kirkley v. General Baking Co.*, 217 *Mich.* 307, 186 *N. W.* 482; *James Black Dry Goods Co. v. Iowa Industrial Commissioner*, 186 *Iowa* 657, 173 *N. W.* 23; *Gallagher's Case*, 219 *Mass.* 140, 106 *N. E.* 558.

Counsel for the plaintiff places great reliance upon the Pennsylvania decisions under a Statute precisely similar to our own. Pennsylvania seems firmly committeed to the doctrine that where a wife is not living with her husband her status, on his death, as one "actually dependent upon him for support" depends upon whether or not he has repudiated his legal obligation to support her and whether or not she has acquiesced in such repudiation. Where she has not acquiesced in such repudiation of her husband's obligation, she has been held to be actually dependent. *Creasy v. Phœnix Utilities Co.*, 276 *Pa.* 583, 120 *A.* 659; *Morris v. Yough Coal & Supply Co.*, 266 *Pa.* 216, 220, 109 *A.* 914; *Shimkus v. Philadelphia & Reading Coal & Iron*

Co., 280 *Pa.* 88, 124 *A.* 335; *Pykosz v. Koehler & Streng Co.,* 105 *Pa. Super.* 605, 161 *A.* 469; *John v. Susquehanna Collieries Co.,* 113 *Pa. Super.* 493, 173 *A.* 684. Where she has acquiesced in the repudiation, she has been denied compensation. *Karpati v. Cambria Steel Co.,* 70 *Pa. Super.* 202; *Allem v. E. J. Romig & Son,* 100 *Pa. Super.* 502.

With all due respect to the Pennsylvania decisions, we think they have minconstrued the purposes of compensation legislation and have engrafted upon the *Act* something entirely foreign to it. Under those decisions the word "actual" is entirely superflous and is given no consideration at all. The *Act* does not purport to enforce or to pay compensation for moral or legal obligations to support but merely to compensate a beneficiary for something that she has lost by the death or for being deprived of something that she had a reasonable expectation of obtaining. Actual dependency involves a question of actual fact and cannot be settled by a consideration of moral or legal obligations. *Driscoll v. Jewell Belting Co.,* 96 *Conn.* 295, 114 *A.* 109; *Sweet v. Sherwood Ice Co.,* 40 *R. I.* 203, 100 *A.* 316; *Powers v. Hotel Bond Co.,* 89 *Conn.* 143, 93 *A.* 245.

Where a wife is not living with her husband and is receiving no support from him, her action in attempting to enforce his legal obligation, or her failure so to do, may be of considerable evidential value. This value does not spring from the mere acquiescence in her husband's repudiation of his legal obligation but its evidential value lies in the bearing it may have on her reliance upon or her looking forward to that future support and upon the reasonableness of her expectation of obtaining it. In *New Monckton Collieries v. Keeling,* [1911] *A. C.* 648, Lord Atkinson said:

"It by no means follows, however, that though there is no

presumption of law that a wife is dependent upon her husband's earnings merely because of his legal obligation to maintain her, this legal obligation is to be ignored in deciding on the fact of her dependency. On the contrary, the existence of the obligation, the probability that it will be discharged, either voluntarily or under compulsion, the probability that the wife will ever enforce her right if the obligation be not discharged voluntarily, are all matters proper to be considered  *  *  *  in determining the question of fact whether, or not, the wife, at the time of her husband's injury, looked to his earnings for her maintenance and support in whole or in part. It is one of the many elements to be taken into account."

Where, therefore, as in this case, a wife has been living apart from her husband for four years and ten months and has received no support (other than a gift of $1.00), there is certainly no cessation by his death of any support which she has been getting or which she has relied on. Any reasonable expectation on her part of future support is only sustained in the record by her statement that she had a "hope of future support if he got a job." This, we think, is not sufficient. Every pertinent definition of "hope" must include, with "desire," an element of "expectation," which in this case is entirely lacking and not borne out by any fact.

Our conclusion, from a thorough consideration of the case, is that the widow was not actually dependent upon her deceased husband at the time of his death within the meaning of the Statute, and therefore is not entitled to compensation for his death. Regardless of our personal inclinations, we are in no way justified in taking the money from the defendant and giving it to the claimant, unless her claim can be sustained under the law. The Statute was, as we have shown, purely compensatory in intent and was not designed to give to a widow not living with her husband something that she had never had, never relied upon, and which she had never had the slightest reasonable expectation of receiving. As said by *Lord Robson* in the *New Monckton Collieries Case, supra:*

"Money coming to a widow under the *Act* is not a present in consideration of her status; it is a payment by a third party to compensate her, as a dependent, for her actual pecuniary loss by her husband's death."

The finding of the Industrial Accident Board is affirmed.

NOTE. This case is pending in the Supreme Court.