DELAWARE COUNTY TRUST COMPANY, guardian of the Estate of Mary Cacciatore, an alleged weak-minded person, v. GENERAL CHEMICAL CO., a corporation.

(*March* 7, 1949.)

TERRY, J., sitting.

*H. Eugene Savery* for the appellant.

*William H. Bennethum* (of the firm of Marvel and Morford) for the appellee.

Superior Court for New Castle County, No. 336, Civil Action, 1948.

TERRY, J.

This is an appeal from a decision of the Industrial Accident Board in the case of Delaware County Trust Company, a Pennsylvania corporation, guardian of Mary Cacciatore, a weak-minded person, claimant below, now appellant, against General Chemical Co., employer below, now appellee. Mary Cacciatore will be herein referred to as the appellant.

The appellant and John Cacciatore, her husband, lived together with their six children at 3230 West Third Street in the City of Chester, Pennsylvania. The appellant became mentally ill, the cause of which related directly to menopausal phychosis resulting in disorientation, delusions, hallucinations, depression and exaltation. On August 22, 1934, her mental illness had progressed to such a point that she was termed a "manic depressive"; thus, necessitating her commitment to the Norristown State Hospital for mental diseases. She has remained at that institution from the date of her commitment, August 22, 1934, down to the time of the commencement of this action.

In the winter of 1934 the appellee employed John Cacciatore to work at its plant in Delaware, north of Wilmington, where he remained continuously until he was injured on December 12, 1946, from which injury he died on December 15, 1946.

John Cacciatore at the time of his death received a weekly wage of $44.40. Yet, during the major portion of his employment his weekly earnings were but $20, out of which he maintained the home in Chester and supported his six children as best he could. He did not contribute to the support of his wife at the Norristown Hospital. Because of her mental condition, his visits were curtailed shortly after her commitment.

The appellee concedes that the injury sustained by

John Cacciatore, resulting in his death, arose out of and in the course of his employment.

The pertinent statute involved is Section 11, Subsection 9 of Chapter 175 of the Revised Code of Delaware, 1935, which provides in part as follows: "* * * No compensation shall be payable under this section to a widow, unless she was living with her deceased husband at the time of his death or was then actually dependent upon him for support * * *."

The appellant proceeded below under both aspects of Section 11: (1) That she was "living with her deceased husband at the time of his death", and (2) that she was "then actually dependent upon him for support".

The Board below concluded from the evidence (1) That the appellant was not "living with her deceased husband at the time of his death", and (2) that the appellant was not "then actually dependent upon him for support".

Upon the foregoing findings the Board determined, as a matter of law, that

"1. In accordance with the provisions of Section 11, Sub-section 9, Chapter 175, Revised Code of Delaware (1935):

" 'No compensation shall be payable under this section to a widow, unless she was living with her deceased husband at the time of his death or was then actually dependent upon him for support.'

"The Delaware Workmen's Compensation Law does not provide for presumptive dependency. Dependency must be established by actual facts and not be a consideration of moral or legal obligations.

"It Is Therefore Awarded and Adjudged by The Industrial Accident Board of the State of Delaware, this

Nineteenth day of February, A.D. 1948 that the petition of the Delaware County Trust Company, Guardian of the Estate of Mary Cacciatore, an alleged weak-minded person versus the General Chemical Company be and the same is hereby dismissed."

From this decision the appellant has appealed.

■■ The establishment of dependency is ordinarily an essential prerequisite to recovery in compensation cases involving death. In determining a widow's right to compensation, under the provisions of Section 11, cases where the husband and wife were living together must be distinguished from cases where they were living apart. In the first instance, if it be established as a fact that the widow was living with her husband at the time of his death, then dependency follows as a matter of law. In the second instance, if the widow was not living with her husband at the time of his death, then Section 11 imposes upon her the duty of showing that she was "then actually dependent upon him for support." *Koeppel v. E. I. Du Pont de Nemours & Co.*, 7 *W.W.Harr.* 369, 183 *A.* 516, 519.

The appellant has abandoned that portion of her contentions below relating to actual dependency for support, and relies solely upon the contention that she was living with her deceased husband at the time of his death.

The appellee urges that the appellant's unbroken absence from the home for a period of twelve years (1934-1946) is of such permanent character that it should not be considered in the category of cases involving visits, employment and conveniences; thus, it is said that the Board below correctly found as a fact that the appellant was not living with John Cacciatore, her husband, as of the time of his death.

■ I think a liberal interpretation should be placed

upon the phrase (Section 11) "living with her deceased husband at the time of his death". The question involved is largely one of intention. In fact, it is analogous to the question of one's domicile. It does not turn upon time or distance separating the parties, but upon the nature and character of the absence and the intention of the parties in relation thereto.

 The Legislature never intended to deny compensation to a widow merely because she was temporarily or even permanently absent from the home of her husband at the time of his death, if her absence was due entirely to her mental or physical illness, especially so in a case as here where the separation was not wilful or voluntary on the appellant's part and where there had not been any estrangement or divorce, or purpose to separate, or agreement or understanding to live apart, or wrongdoing, or a violation of any marital relation or duty. This seems to me to be the only practical interpretation of the law, and the one which was actually intended. If the phrase, as indicated, should receive the opposite interpretation, that is that there must be a physical dwelling together in order to support a finding that a husband and wife were living together at the time of the husband's death, the purpose of the enactment in many instances would be defeated, as often a wife may be absent from home for long intervals although there be no break in the marriage relation, no estrangement, and no intent to separate or change the relations or obligations created by the marriage contract.

 The question, of course, is one of fact involving possible questions of law, but, whenever a husband and wife are found to be living together, then, under Section 11, dependency, an essential prerequisite to recovery in compensation cases involving death, follows as a matter of law.

The separation in this case was a thing of necessity, brought about solely by the chronic illness of the appellant. No other deduction could reasonably be drawn from the testimony. I find no evidence whatsoever to change the character of the separation up to and including the time of the death of her husband.

I think the Board below erred when it concluded that the appellant was not living with John Cacciatore, her husband, at the time of his death. In this respect the decision dismissing the appellant's Petition as entered below is reversed, with directions that the Board reopen the case and enter an order for compensation to be paid to the appellant in accordance with other provisions of the Workmen's Compensation Act pertaining thereto.